IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 4:18-cr-260 |
| PATRICK KENNALLY, | |
| Defendant. | |

## O R D E R

Like much of the world, inmates in federal prisons are understandably concerned about the health risks posed by the COVID-19 ("coronavirus") pandemic. Given the recognized risks that the pandemic poses within detention facilities, many federal prisoners are filing motions for immediate release or to alter their place of confinement. Defendant Patrick Kennally has filed a motion requesting such relief. (Doc. 1378.) The Court is not unsympathetic to Kennally's concerns. However, his concerns do not warrant the extraordinary relief he seeks. Thus, for the reasons set forth below, the Court **DENIES** Kennally's Motion for Compassionate Release, (id.).[1]

### BACKGROUND

After Kennally pleaded guilty to conspiracy to possess with intent to distribute and to distribute methamphetamine, the Court sentenced him to fifty-five months' imprisonment on August 6, 2019. (Docs. 1107, 1126.) The sentence represented a significant downward departure and variance from the range recommended by the United States Sentencing Guidelines. Kennally is currently serving that sentence at USP Lewisburg located in Lewisburg, Pennsylvania, with a projected release date of October 3, 2021. (Doc. 1384, p. 2.) On December 1, 2020, Kennally

---

[1] The Court **GRANTS** the Government's Motion for Extension of Time, (doc. 1382), and considers its response, (doc. 1384), timely filed.

filed a motion seeking compassionate release based primarily on the general risk to his safety posed by the threat of contracting COVID-19 within the prison facility. (Doc. 1378.) The United States has responded in opposition to Kennally's Motion, (doc. 1384), and he has filed a Reply, (doc. 1387).

## DISCUSSION

### I.   Defendant's Request to be Released to Home Confinement

In his original Motion, Kennally requested that the Court reduce his sentence and allow him to immediately commence his supervised release. (Doc. 1378.) However, in his Reply, he alternatively asks that he be allowed to serve the remainder of his sentence on home confinement. (Doc. 1387, p. 2 ("Home confinement is an alternative form of OUT custody; thus I am requesting a lateral transition in my custody, and not a decrease in custody status.").) Thus, the Court will first address this request before addressing his request for compassionate release.

Designation of an inmate's place of confinement rests within the absolute discretion of the Bureau of Prisons ("BOP"). Pursuant to 18 U.S.C. § 3621, "[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed . . . ." 18 U.S.C. § 3621(a). This statute gives the BOP the exclusive authority to designate the place of imprisonment of any prisoner. Id. at § 3621(b). The United States Supreme Court has interpreted this statute to mean that "the Attorney General, through the BOP, has the responsibility for administering [a prisoner's] sentence." United States v. Kennally, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); see also United States v. Smalley, No. 1:13-CR-010, 2015 WL 5001189, at *1 (S.D. Ga. Aug. 21, 2015) ("the 'primary authority to designate defendant's manner and place of confinement at any stage during execution of [his] prison sentence rests with the Bureau of Prisons, not with the Court'") (quoting United States v.

Morales–Morales, 985 F. Supp. 229, 231 (D.P.R. 1997)); Brown v. Atkinson, No. 09–23555–Civ, 2010 WL 3659634, *4 (S.D. Fla. Jun. 11, 2010) ("A federal district court does not have the authority to order an inmate's placement in a particular facility or program.") (cited sources omitted).

Recent developments surrounding the COVID-19 pandemic have not taken decisions regarding placement in home confinement outside the purview of the BOP. A Memorandum from the Attorney General directs the Director of the Bureau of Prisons ("BOP") to prioritize the use of "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." See Memorandum dated Mar. 26, 2020, *available at* https://www.justice.gov/file/1262731/download (last visited October 5, 2020). As explained by the Honorable Lisa Godbey Wood of this Court:

> On March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General issued a memorandum directing BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations."

United States v. Allen, No. CR 214-024, 2020 WL 2199626, at *1 n.1 (S.D. Ga. May 6, 2020). "[A] request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release." Id. at *1. To effectuate the Attorney General's

March 26, 2020 and April 3, 2020 memoranda, the BOP is utilizing its authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541—not the compassionate release provision of 18 U.S.C. § 3582(c).  See Allen, 2020 WL 2199626, at *1.  Neither Section 3624(c)(2) nor Section 60541 vests the Court with any authority to order the BOP to transfer a defendant to home confinement.  Id. (denying request for home confinement and explaining that statutes Attorney General is using to implement CARES Act "do not authorize a federal court to order the BOP to release a prisoner"). Thus, neither the Attorney General's memoranda nor the statutes relied upon by the BOP to effectuate the memoranda authorize the Court to order that Kennally serve the remainder of his sentence in home confinement.

For all these reasons, the Court lacks the authority to grant Kennally's request that he be released to home confinement.  Only the BOP can grant him that relief, and he should, therefore, make his request to that agency and not this Court.  Consequently, the Court **DENIES** Defendant's request for release to home confinement.

## II.     Defendant's Request for Compassionate Release

The First Step Act at 18 U.S.C. § 3582(c)(1)(A) provides a narrow path for a district court to reduce the sentence of a criminal defendant where there are "extraordinary and compelling reasons" to do so.  Prior to the passage of the First Step Act, only the Director of the BOP could file a motion for compassionate release in the district court.  The First Step Act modified Section 3582(c)(1)(A) to allow a defendant to move a federal district court for compassionate release. However, there are four prerequisites to a court's granting compassionate release under the First Step Act.  First, the defendant must have exhausted his administrative rights with the BOP.  Id. Second, the court must find that "extraordinary and compelling reasons warrant" release.  18 U.S.C. § 3582(c)(1)(A)(i).  Third, the court must consider the factors set forth in 18 U.S.C. §

4

3553(a). 18 U.S.C. § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). "The defendant generally bears the burden of establishing that compassionate release is warranted." United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *2 (M.D. Fla. May 15, 2020) (citing United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013)).

The Court may only grant Kennally compassionate release and reduce his sentence if it finds that "extraordinary and compelling reasons" warrant such a reduction and that the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines provides the applicable policy statement, explaining that a sentence reduction may be ordered where a court determines, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), that "extraordinary and compelling reasons" exist and the defendant does not present a danger to the safety of any other person or the community. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018). The application notes to this policy statement list three specific examples of extraordinary and compelling reasons to consider reduction of a defendant's sentence under Section 3582(c)(1)(A): (1) a medical condition; (2) advanced age; and (3) family circumstances. Id. at § 1B1.13 cmt. n.1(A)–(C). A fourth catch-all category provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. Id. at § 1B1.13 cmt. n.1(D).

In this case, the only category into which Kennally's Motion could arguably fall is a qualifying medical condition. To qualify as extraordinary and compelling, an inmate's medical condition must be "serious and advanced . . . with an end of life trajectory," or must be serious

enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care within the environment of a correctional facility and . . . he or she is not expected to recover [from it]."  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13, cmt. n.1(a)(i).

Some medical conditions place an individual at a higher risk of developing a serious illness due to COVID-19.  See Centers for Disease Control, *Groups At Higher Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited on January 27, 2021).  As to these individuals, the risk of contracting COVID-19 may pose extraordinary and compelling circumstances.  However, Kennally does not point to an individualized medical condition that places him at a higher risk of illness but rather bases his motion on the risk of contracting COVID-19 within his facility in general.  (See doc. 1378.)  He contends that this risk when combined with his need to reestablish mental health services, his demonstrated rehabilitation, his meritorious military service, his service of a portion of his sentence, and his low risk of recidivism warrant relief.  (Id. at p. 1.)

As an initial matter, judges within this District have repeatedly found that the risk of contracting COVID-19 generally does not rise to the level of an extraordinary and compelling circumstance warranting compassionate release.  See, e.g., United States v. Smith, No. 1:15-cr-63, 2020 WL 4194013, at *1 n.1 (S.D. Ga. July 21, 2020) ("Defendant's generalized concerns about COVID-19 are insufficient to uniquely position him to be so adversely affected by COVID-19 that his release is warranted."); United States v. Brown, No. 4:13-cr-7, 2020 WL 4017843, at *2 (S.D. Ga. July 16, 2020) ("[T]he Court does not find that COVID-19 is in and of itself an extraordinary and compelling reason to warrant compassionate release."); United States v. Johnson, No. 1:12-CR-129, 2020 WL 3874157, at *1 (S.D. Ga. July 9, 2020) ("Here, [the defendant] has not made any argument let alone showing justifying his release other than a generalized concern about

COVID-19, which is too speculative to qualify as extraordinary and compelling."); see also, United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread."). Moreover, as the Government points out, to the extent Kennally argues that grounds outside of those listed within Section 1B1.3 could warrant relief under Section 3582(c)(1)A), that argument is debatable at best. (See, doc. 1384, p. 7 n. 4 (citing, *inter alia*, United States v. Monaco, 832 F. App'x 626, 629—30 (11th Cir. Oct. 22, 2020).) Even putting those points aside, the Court has reviewed the totality of Kennally's filings and contentions and finds that he has not presented extraordinary and compelling reasons that would qualify him for compassionate release.

Moreover, the Court can only grant compassionate relief "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A); see also, United States v. Webster, No. 3:91CR138, 2020 WL 618828, at *5–6 (E.D. Va. Feb. 10, 2020) (denying defendant compassionate release even though defendant's terminal cancer presented extraordinary and compelling grounds for relief because the purposes of sentencing weigh against compassionate release and noting "[e]ven if a defendant meets the eligibility criteria for compassionate release, the Court retains discretion over whether to grant that relief."). Pursuant to Section 3553(a), federal courts must impose sentences "sufficient, but not greater than necessary" to satisfy the purposes of sentences. 18 U.S.C. § 3553(a). To that end, courts must consider:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed –
   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. to afford adequate deterrence to criminal conduct;

7

      c. to protect the public from further crimes of the defendant; and
      d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3.    the kinds of sentences available;
4.    the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];
5.    any pertinent policy statement ... by the Sentencing Commission;
6.    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7.    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

An evaluation of these factors weighs heavily against Kennally's request for compassionate release. The charge Kennally pleaded guilty to is a serious crime for which Congress establishes a penalty of up to twenty years. Kennally already received a sentence well below that potential penalty and far below the sentence recommended by application of the United States Sentencing Guidelines.[2] Further, the Court sentenced him only a year and six months ago. Releasing Kennally after that short period would not reflect the seriousness of his offense, would not provide just punishment, and would contradict the purpose of deterrence. 18 U.S.C. § 3553(a)(2)(A)-(B). Further, remaining within the custody of the Bureau of Prisons provides Kennally the opportunity to receive "needed educational or vocational training" and "other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). While Kennally raises concerns about the psychological treatment he is receiving and the conditions of his detention, the Government's

---

[2] In his Reply, Kennally contends that the Government overstated his criminal history and that he was "inappropriately deemed a Category III based off [his] involvement and successful completion of a Veterans Court or Veterans Justice Outreach." (Doc. 1387, p. 1.) However, the Court already took that overrepresentation into consideration when sentencing him well below his Guidelines range. (Doc. 1127, p. 4.) Moreover, when reducing his sentence, the Court also took other history and characteristics into consideration that Defendant now raises throughout his Motion and Reply, including his history of military service and his resulting psychological illnesses. (Id.) For Defendant to now use those characteristics to argue for yet another reduction in his sentence borders on disingenuousness. Indeed, it is concerning to the Court that Defendant, who previously expressed great remorse for his criminal wrongdoing in hearings before the Court, now minimizes his actions and fails to appreciate the benefit he already received.

Response indicates that the BOP is taking measures to address COVID-19 in its facilities including Kennally's.  Moreover, allowing Kennally to be released would create significant sentencing disparities between him and other defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).  In sum, the Court has reviewed all of the Section 3553(a) factors and finds that they warrant the denial of his request for compassionate release.

## CONCLUSION

Based upon the foregoing, the Court **DENIES** Defendant Patrick Kennally's Motion for Compassionate Release.  (Doc. 1378.)

**SO ORDERED**, this 27th day of January, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA